UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA
OMAHA DIVISION

Crystal Schleicher,                              )
                                                 )
        Plaintiff,                               )
                                                 )
        v.                                       )
                                                 )
Life Insurance Company of North America,         )       Case No.:  8:23-cv-556
                                                 )
        and                                      )
                                                 )
Laboratory Corporation of America                )
Holdings Group Benefits Plan                     )
                                                 )
        Defendants.                              )

## **COMPLAINT**

1.  The Plaintiff, Crystal Schleicher, by and through the undersigned counsel, Talia Ravis, files this Complaint against Defendants Life Insurance Company of North America[1] (hereinafter "LINA") and Laboratory Corporation of America Holdings Group Benefits Plan (hereinafter "the Plan").

2.  This action arises under the Employee Retirement Income Security Act of 1974("ERISA"), 29 U.S.C. §1001. The Court has jurisdiction over this case pursuant to 28U.S.C. §1331, in that this action arises under the laws of the United States. Specifically, Crystal Schleicher brings this action to enforce her rights under ERISA as authorized by 29U.S.C. §1132 (a)(1)(B).

3.  The Plaintiff, Crystal Schleicher, has at all times material hereto, been a citizen of Mitchell, Nebraska.

---

[1] Life Insurance Company of America is a subsidiary of New York Life Insurance Company.

4. Plaintiff is informed and believes that Defendant LINA is a Pennsylvania for-profit corporation doing business in Mitchell, Nebraska.  Therefore, pursuant to 29 U.S.C. §1132(e)(2), venue is proper in this judicial district.

5. LINA issued the Plan, group policy number LK-980074, to Plaintiff's former employer, Laboratory Corporation of America Holdings Group (hereinafter "LCAH"), for the benefit of its employees, agreeing to pay Plaintiff, as a participant of the Plan, long-term disability ("LTD") benefits in the event she became disabled and unable to work.

6. The Plan is a group long-term disability employee benefit plan that provides LTD benefits to participants of the Plan in the event they become disabled on a long-term basis. The LTD benefit pays 60% of the employee's former salary. The benefits are payable as long as the participant remains totally and permanently disabled, through age 65.

7. LINA actually insures the disability insurance coverage to LCAH employees.

8. LINA is the payor of benefits under the Plan.

9. LINA processed and terminated Plaintiff's LTD claim.

10. LINA has a financial interest in Plaintiff's LTD claim.

11. LINA has a conflict of interest on Plaintiff's claim.

## FACTUAL ALLEGATIONS

### 1) Vocational Information.

12. Plaintiff began employment with LCAH in May of 2020.

13. Plaintiff worked as a Project Manager for LCAH.  In this position, Plaintiff's role included, but was not limited to: Overseeing the planning, implementing, and tracking of specific short-term and long-term projects for external clients which has a beginning, an

end, and specified deliverables; ongoing responsibility for planning and managing of projects, focusing on meeting project commitments, including communicating with sponsors and stakeholders, etc., spending significant time on project management responsibilities; leading or assisting in the planning, implementation and introduction of projects for GlobalCODE, snapTRACK, and new systems and technologies; participating in the design and/or testing phases; facilitating the definition of project missions, goals, tasks, and resource requirements; resolving or assisting in the resolution of conflicts within and between projects or functional areas; developing methods to monitor project or area progress, providing corrective supervision if necessary; being responsible for assembling the project staff for their technical or functional development, performance, and/or termination during the project or projects; facilitating the definition of service levels and customer requirements; interacting regularly with existing or potential clients to determine their needs and to develop plans for improving delivery; advocating on behalf of clients and representing clients' needs as appropriate to senior management; working cross-functionally to solve problems and implement changes; prioritizing own and team's work; anticipating consequences of actions, potential problems, or opportunities for change; setting and meeting realistic deadlines; forecasting changes and communicating current and projected issues; creating within the team a shared focus on the importance of achieving results; creating work standards for projects; establishing and defining roles and responsibilities, specific outcomes, and clear measures for quality and success of the team; following through with fair and consistent consequences for both achieving and not achieving results; providing performance feedback and assisting employees with plans for development and training; producing project status reports on

3

cadence agreed with client; developing and tracking project budgets; and assessing and disclosing risks of project and project deadlines to internal staff and clients.

14. Plaintiff's own occupation as project manager required her to travel locally, domestically, regionally, and globally 75% of the time and 75% of that time required an overnight stay.

15. The physical requirements of Plaintiff's own occupation as a project manager include prolonged periods sitting at a desk and working on a computer 8-10 hours a day; the ability to lift up to 25 pounds at a time; clear writing and typing of up to 65 to 75 words per minute; the ability to multi-task and remember critical tasks; traveling and long standing for site presentation, for up to 8 hours at a time; climbing ramps and stairs for travel; reaching and stretching above head to move objects; kneeling and standing; and reaching objects and pickup off of the floor.

**2)  The Definition of Disability Under the Plan.**

16. According to the terms of the Plan, "Disability/Disabled" is defined as:

*"Disability/Disabled*
*You are considered Disabled if, solely because of Injury or Sickness, you are:*
*1.  unable to perform the material duties of your Regular Occupation; and*
*2.  unable to earn 80% or more of your Indexed Earnings from working in your Regular*
*    Occupation.*
*After Disability Benefits have been payable for 24 months, you are considered Disabled if,*
*solely due to Injury or Sickness, you are:*
*1.  unable to perform the material duties of any occupation for which you are, or may*
*    reasonably become, qualified based on education, training or experience; and*
*2.  unable to earn 60% or more of your Indexed Earnings.*

*We will require proof of earnings and continued Disability."*
[The Plan page 14]

**3)  Medical Information Supporting Plaintiff's Total Disability.**

17. In January of 2021, Plaintiff was forced to stop working due to the disabling effects of fibromyalgia, chronic pain, and paresthesias of the forearm and hand. Plaintiff also

4

suffers from anxiety, depression and panic attacks, secondary to her physically disabling symptoms.

18. As a result of these conditions, Plaintiff suffers from chronic pain throughout her entire body, numbness in fingers and hands, sensitivity to cold and touch, trouble sleeping, fatigue, and panic attacks.

19. Plaintiff, together with her physicians, has attempted to treat her disabling conditions with EMGs, nerve conduction studies, rehabilitation, physical therapy, and trials of numerous medication therapies, but nothing has provided her with enough relief to return to work.

20. Plaintiff's physicians have consistently held that she has remained totally disabled from performing the material duties of any occupation since she was forced to stop working in January of 2021, and that she continues to remain totally and permanently disabled today.

21. In November of 2022, the Social Security Administration approved Plaintiff's claim for Social Security Disability Insurance Benefits, finding that she is unable to perform "any substantial gainful activity".  The SSA defines "disability" as follows:

*"the term disability means:*

*(A) Inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."*

[SSA §216(I)(1)]

**4) Claim Information Under the Plan.**

3. Plaintiff applied for LTD benefits under the Plan in June of 2021.

4. In a letter dated December 17, 2021, LINA denied Plaintiff's claim for LTD benefits, alleging Plaintiff was not disabled under the Plan's definition of disability and had no medically supported restrictions beyond March 10, 2021.

5. The December 17, 2021 letter also asked Plaintiff to complete a Functional Capacity Evaluation if she intended to appeal the benefit denial.

6. On March 1, 2022, Plaintiff completed a Functional Capacity Exam, the results of which determined that Plaintiff could not work at the sedentary exertion level.

7. On March 6, 2022, Plaintiff submitted a request for an appeal of the denial of LTD benefits, without the help of counsel. Included with her appeal, Plaintiff submitted the March 1, 2022 Functional Capacity Exam; letters in support of her disability from her treating Nurse Practitioner, neighbor, and her father; her job description; a January 23, 2022 State of Nebraska Disability Determinations evaluation; and a January 7, 2022 psychological evaluation.

8. In a letter dated April 5, 2022, LINA informed Plaintiff that her claim was under review by a medical professional.

9. On April 7, 2022, Plaintiff submitted a letter in response to LINA's April 5, 2022 letter, enclosing the results of her March 1, 2022 Functional Capacity Exam and her Social Security Disability award notice.

10. In a letter dated April 21, 2022, LINA informed Plaintiff that LINA was scheduling a second Functional Capacity Exam for Plaintiff.

11. The Functional Capacity Exam was scheduled for May 10, 2022, approximately 3 hours away from Plaintiff's residence.

12. In response, Plaintiff requested that the Functional Capacity Exam be scheduled within 30 miles of her residence.

13. LINA then canceled the second Functional Capacity Exam, but erroneously alleged throughout the administration of Plaintiff's claim that she declined to attend.

14. In a letter dated August 16, 2022, LINA again informed Plaintiff that her appeal was under review by a medical professional.

15. In a letter dated September 7, 2022, LINA determined the denial was warranted, but also allowed Plaintiff an opportunity to respond to LINA's medical review of her claim by September 21, 2022.

16. On October 4, 2022, Plaintiff submitted updated medical records to LINA as part of her appeal.

17. In a letter dated October 19, 2022, LINA upheld the denial of Plaintiff's claim but allowed Plaintiff to submit additional information in support of her claim through November 2, 2022.

18. Plaintiff submitted a letter to LINA dated October 26, 2022 disagreeing with the denial of benefits along with updated medical records and an October 20, 2022 letter from Plaintiff's treating chiropractor in support of her disability.

19. In a letter dated November 9, 2022, Plaintiff notified LINA she was approved for SSDI benefits.

20. LINA acknowledged Plaintiff's SSDI award in a letter dated November 10, 2022. In the letter, LINA explained it would request Plaintiff's SSDI file and that her appeal would be tolled from November 10, 2022 until the SSDI file was received.

21. On December 15, 2022, Plaintiff submitted a letter from her treating physician, Dr. Sole, in support of her appeal.

22. On January 23, 2023, Plaintiff submitted a letter to LINA as part of her appeal, explaining why the March 1, 2022 Functional Capacity Exam results were valid and documented that LINA asked Plaintiff to attend a second FCE at a location over three hours from Plaintiff's residence.

23. In a letter dated March 24, 2023, LINA upheld the benefit denial once again, alleging that Plaintiff was not physically functionally limited. The letter included reviews by a rheumatologist and an occupational medicine physician, and allowed Plaintiff through April 11, 2023, to submit additional information in support of her appeal.

24. On March 30, 2023, Plaintiff submitted additional medical records to LINA in support of her appeal, and in a letter dated April 10, 2023, Plaintiff refuted the medical reviewers' determinations and again submitted her March 1, 2022 Functional Capacity Evaluation results and her Social Security Disability claim file in support of her claim.

25. In a letter dated April 26, 2023, Defendant LINA upheld the adverse benefit decision and again allowed Plaintiff the opportunity to respond to another medical review.

26. On May 10, 2023, Plaintiff submitted a letter of support from her treating physician attesting to the fact that Plaintiff remained totally disabled from any gainful occupation.

27. In a letter dated June 5, 2023, LINA scheduled an in-person medical exam ("IME") for Plaintiff, 195 miles away from her house.

28. Plaintiff completed the IME on June 29, 2023.

29. In a letter dated July 19, 2023, LINA upheld the denial decision and enclosed two medical record reviews, again allowing Plaintiff the opportunity to respond with new evidence before issuing its final determination.

30. On August 1, 2023, Plaintiff submitted a letter from her treating physician dated July 31, 2023, directly refuting LINA's medical review and reiterating continued support for Plaintiff's claim for disability benefits.

31. Despite this information, LINA finally denied Plaintiff's claim in a letter dated August 4, 2023.

32. The medical information in LINA's claim file establishes that Plaintiff was entitled to receive long-term disability benefits under the Plan for the entire duration of the benefit period.

33. Plaintiff's physicians have consistently reported to LINA that Plaintiff remains totally disabled.

34. Plaintiff provided significant proof of disability. Despite this proof, Defendants refused to pay Plaintiff her disability benefits.

35. In determining Plaintiff's LTD benefits, LINA acted as a fiduciary in the administration of Plaintiff's claim.

36. LINA, acting under a conflict of interest, breached its fiduciary duties set forth under ERISA §404, 29 U.S.C. §1104, in failing to act for the exclusive benefit of Plaintiff and in failing to act in accordance with the terms of the Plan.

37. Plaintiff exhausted her administrative remedies under the Plan, rendering her claim ripe for litigation under ERISA.

38. This lawsuit ensued.

## CLAIMS FOR RELIEF

**COUNT 1:   WRONGFUL DENIAL OF LONG-TERM DISABILITY BENEFITS**

39. The foregoing paragraphs are hereby realleged and are incorporated herein by reference.

40. From January of 2021 until the present, Plaintiff has remained unable to perform her own occupation, or any other.

41. Plaintiff has provided the Defendants with substantial medical evidence verifying her total disability and eligibility for continued LTD benefits under the Plan.

42. Plaintiff's physicians have reported that Plaintiff is unable to work due to the seriousness of her conditions.

43. Defendants have wrongfully terminated Plaintiff's long-term disability benefits in violation of the Plan and ERISA.

44. Defendants have breached the Plan and violated ERISA by failing to pay disability benefits to Plaintiff at a time when LINA knew, or should have known, that Plaintiff was entitled to those benefits under the terms of the Plan.

45. Plaintiff is informed and believes and thereon alleges that Defendants wrongfully denied her LTD benefits under the Plan by other acts or omissions of which Plaintiff is presently unaware, but which may be discovered in this future litigation and which Plaintiff will immediately make Defendants aware of once said acts or omissions are discovered by Plaintiff.

46. Following the denial of benefits under the Plan, Plaintiff exhausted all administrative remedies required under ERISA, and/or demonstrated by Defendants' actions herein, attempts to pursue further administrative remedies would have been futile.

47. Plaintiff has performed all duties and obligations on Plaintiff's part to be performed under the Plan.

48. As a proximate result of the aforementioned wrongful conduct of LINA, Plaintiff has damages for loss of LTD benefits in a total sum to be shown at the time of trial.

49. LINA's wrongful conduct has created uncertainty where none should exist; therefore, Plaintiff is entitled to enforce her rights under the terms of the Plan.

50. LINA abused its discretion by wrongfully denying Plaintiff's LTD benefits.

51. By denying Plaintiff's claim despite a plethora of evidence supporting her eligibility for benefits under the Plan, Defendants' denied Plaintiff's claim in bad faith.

WHEREFORE, the Plaintiff, Crystal Schleicher, requires that this Honorable Court enter Judgment:

A. Finding that Crystal Schleicher is entitled to LTD benefits and order the Defendants to pay all past due benefits and pay for further monthly benefits as they become due.

B. Award the Plaintiff interest on the amount of past due benefits, which remain unpaid.

C. Award the Plaintiff her attorney's fees and costs.

D. Awarding all other relief as may be just and appropriate.

Dated: December 18, 2023

<div style="margin-left:auto; width:50%;">

s/Talia Ravis
Talia Ravis
MO Bar No. 58366
Law Office of Talia Ravis, PA
9229 Ward Parkway, Suite 370
Kansas City, Missouri 64114
816-333-8955 (tel)
1-800-694-3016 (fax)
talia@erisakc.com
ATTORNEY FOR PLAINTIFF

</div>